J-A29013-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| E.J.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.A.D. | : | |
| | : | |
| Appellant | : | No. 384 WDA 2019 |

Appeal from the Order Entered February 6, 2019
In the Court of Common Pleas of Erie County Domestic Relations at
No(s):  NS200901183

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED FEBRUARY 26, 2020

L.A.D. (Mother) appeals pro se from the February 6, 2019 order that denied her petition for modification of an existing child support order, dated October 11, 2016, for the benefit of her and E.J.A.'s (Father) child, who was born in October of 2004.  After review, we affirm.[1]

The trial court provided the following overview of the facts and procedural history that led to the present appeal.

> In place at the time of the present [p]etition for [m]odification was an October 11, 2016 [o]rder of [c]ourt which set Mother's monthly support obligation at $610.63, plus arrears. The [o]rder assessed [Father] with a monthly net income of $5,050.73[,] and Mother with a monthly earning capacity of $3,827.30[,] based on her long-standing position with [General

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This present appeal is at least the third one filed by Mother with this Court that relates to her payment of child support.

Electric (GE)]. The [c]ourt entered the October of 2016 [o]rder following a de novo hearing on Mother's June 30, 2016 [p]etition for [m]odification of an [e]xisting [s]upport [o]rder. At the 2016 de novo hearing, Mother repeated previous claims that she was medically unable to work due to a February of 2015 motor vehicle accident, which was allegedly aggravated by a January of 2016 accident. She further asserted that, even if medically able to work, she no longer had a job with GE. As further detailed in this [c]ourt's December 19, 2016 [o]pinion, the undersigned did not find Mother credible on her disability claims and further determined that her loss of employment was voluntary and that she failed to offer evidence of attempts to mitigate her lost income. The Honorable Superior Court affirmed the decision. See Superior Court 1695 WDA 2016. Accordingly, as of the filing of the present petition, Mother had voluntarily reduced her income and, as of October of 2016, she failed to mitigate the loss. Eight months later, Mother filed the [p]etition for [m]odification presently before the [c]ourt.

Trial Court Opinion (TCO), 2/6/2019, at 1-2.

The court further discussed the testimony provided at the February 2019 hearing in its opinion, setting forth the evidence and its credibility determinations, stating:

At the February 4, 2019 de novo hearing, Mother repeated her prior claims that her reduction in income from $30.08 hourly at GE was involuntary due to injuries from the 2015 and 2016 automobile accidents[,] and the fact that GE told her that there would be no job for her once she was released medically to return to work. The issue of the voluntary reduction of Mother's income was already finally litigated. See November 9, 2017 Memorandum Opinion at Superior Court Docket 1695 WDA 2016.

In an attempt to support her claim of inability to work, presumably between the entry of the October of 2016 [o]rder and the June 9, 2017 filing of her [p]etition for [m]odification, Mother presented a document, purportedly signed by a chiropractor. See Exhibit B. The document is not dated, does not appear on any sort of official or otherwise identifying letterhead, and appears to rely heavily on old information and accounts of Mother discredited in prior support proceedings. Accordingly, the [c]ourt was not

swayed from its prior determination; Mother's reduction in income was voluntary.

. . .

Considering Mother's repeated efforts to reduce or eliminate her support obligation on the basis of unsupported medical claims[,[2]] her motive is questionable. Even giving Mother the benefit of doubt, however, her efforts to mitigate the lost income are severely deficient. At the de novo hearing, Mother presented no evidence of any attempts to mitigate her lost income between entry of the October 2016 [o]rder and the filing of her June 2017 [p]etition for [m]odification. Instead, she asserted that, once she was released to work as of May 26, 2017[,[3]]she gained steady employment as a server for the Concourse earning hourly wages of $7.50. Mother's pay stubs indicate that she commenced her employment in June of 2017, after the filing date of her [p]etition for [m]odification. See Exhibit A. Even considering this effort of Mother[] to mitigate her lost income, calculations from her Chrisbritt Company, LLC Earnings Statements, indicate that from June 18, 2017 through December 30, 2017, Mother worked only 235.25 hours, for an average of 8 hours per week. The only other employment that Mother attempted in 2017 was 54 hours working for Sara's Ice Cream Pub in July of 2017 where she earned $7.25 hourly. See Exhibit A. Mother quit her job at Sara's as she did not feel that it paid enough. Accordingly, even giving Mother the benefit of looking at all of 2017, the entirety of her mitigation efforts consisted of two minimum wage food service jobs with an average of only 10 working hours per week.[4] While assessment of an earning capacity is not necessarily warranted for the life of the support obligation, Mother's deceit regarding her reasons for reduction in income coupled with her very minimal mitigation efforts simply do not warrant modification of her support obligation. Simply stated, the evidence indicates that Mother has put forth minimal effort to find jobs paying more than $22.00 less than her earning capacity and then worked at those low[-]wage jobs for only 1/5 of the time devoted to an average work week. Such meager effort is consistent with a willful failure to obtain appropriate employment, continuing the need for the assessed earning capacity. See Pa.R.C.P. 1910.16-2(d).

> [2] Not only have her claims been unsupported but evidence has shown that Mother simply is not credible. See for example, November 26, 2014, December 10,

2015 and December 19, 2016 [o]pinions of the undersigned finding that Mother failed to return to work despite release by her physician, she was consistently denied disability payments, Mother testified that she "forgot" to see a doctor following the alleged debilitating accident, and photographs documented Mother hopping, kicking and crawling at Tae Kwon Do while allegedly disabled.

[3] As previously detailed, Mother is not credible on her claims of inability to work.

[4] The only evidence of additional attempts at employment is far beyond the scope of Mother's June 9, 2016 [p]etition. Specifically, Mother's testimony and pay stubs indicate that she left her employment at the Concourse in May of 2018 to work for Erie Homes for Children and Adults where she earns $11.40 per hour. Even these pay stubs show only inconsistent part-time hours resulting in a 2018 W-2 Statement of only $6,533.64 for the entire year.

Id. at 2-4. Additionally, the court responded to Mother's assertion that her support obligation should be reduced because she has custody of the child fifty percent of the time in the summer. Despite the summer schedule, the court explained that over a period of a year, Father exercises custody 67% of the time. Moreover, with reliance on Pa.R.C.P. 1910.16-4(c), the court concluded that "a reduction in the basic support obligation does not ordinarily occur unless the child spends 40% or more of his time during the year with the obligor parent." Id. at 4. Accordingly, the trial court denied Mother's request for modification of the child support order.

Mother now appeals to this Court and raises the following issues for our review, which we reproduce verbatim:[2]

1. Did the court err in determining that the defendant's claim was without merit?

2. Did the court err in holding defendant by law at an erning capacity of wages from a prior employment ending in 2015 (General Electric) that has not and is not obtainable at this point in time. In conjunction to the orders dated from 9/02/15 andde novo hearing held on 10/22/15 and continued consistently in 2016, 2017, 2018, and to current (2019). When by law Erie County Court had the capability to review and change it to reasonable and more appropriate earning capacity that is obtainable in Erie County?

3. Did the court err in affirming and holding a decision based of biasness granted from the court itself and past conference officier's belief differences and non-correlating past and present experiences.

4. Did the court err in not reviewing the calculating of the support and adjusting appropriate modification in reduction in the support order with the 50/50 custody?

Mother's brief at 3-5 (unnumbered).

When addressing these types of issues, we are guided by the following:

> [T]his Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either

_____

[2] Mother is identified as the defendant in the trial court's caption because Father had initially filed the complaint for child support in December of 2011. Mother continues to identify herself in her brief as the defendant.

> manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

Samii v. Samii, 847 A.2d 691, 694 (Pa. Super. 2004) (citations omitted). Furthermore, this Court:

> must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

Hogrelius v. Martin, 950 A.2d 345, 348 (Pa. Super. 2008). "When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented." Stokes v. Gary Barbera Enterprises, Inc., 783 A.2d 296, 297 (Pa. Super. 2001), appeal denied, … 797 A.2d 915 (Pa. 2002). "[T]his Court is not free to usurp the trial court's duty as the finder of fact." Isralsky v. Isralsky, 824 A.2d 1178, 1190 (Pa. Super. 2003) (quoting Nemoto v. Nemoto, … 620 A.2d 1216, 1219 (Pa. Super. 1993)).

Mackay v. Mackay, 984 A.2d 529, 533 (Pa. Super. 2009).

Specifically relating to modification of child support obligations, we rely

on Ney v. Ney, 917 A.2d 863 (Pa. Super. 2017), wherein this Court stated:

> "Where a party voluntarily accepts a lower paying job, there generally will be no effect on the support obligation." Pa.R.C.P. 1910-16-2(d)(1). "To modify a support obligation based upon the reduced income, a petitioner must first establish that the voluntary change in employment which resulted in a reduction of income was not made for the purpose of avoiding a child support obligation and secondly, that a reduction in support is warranted based on petitioner's efforts to mitigate any income loss." Grimes v. Grimes, … 596 A.2d 240, 242 ([Pa. Super.]1991); accord Dennis v. Whitney, 844 A.2d 1267, 1269 (Pa. Super. 2004).

>Effectively, [an] [a]ppellant "must present evidence as to why he or she voluntarily left the prior employment and also as to why the acceptance of a lower paying job was necessary." Id. Where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity. Pa.R.C.P. 1910.16-2(d)(4). A determination of earning capacity must consider the party's age, education, training, health, work experience, earnings history, and child care responsibilities.

Ney, 917 A.2d at 866 (quoting Dennis, 844 A.2d at 1269).

We begin our discussion relating to the issues Mother has raised, noting that Mother has failed in issues 1, 3 and 4 to provide sufficient argument that is understandable and Mother's brief does not contain any case citations and/or citations to the record. See Pa.R.A.P. 2119. As for Mother's first issue, her argument consists of two sentences, essentially alleging that the trial court allowed no rebuttal and did not correctly determine the truth of the evidence.

Mother's second issue relies on the language contained in Pa.R.C.P. 1910.16-2(d)(4),[3] and then appears to simply argue that due to her medical

_____

[3] Rule 1910.16-2(d)(4) states:

>(4) Earning Capacity. If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact

restrictions she has not been able to find appropriate employment equal to her earning capacity. To support this assertion, Mother cites the Ney case, wherein the trial court considered and relied on its own internet job search for appropriate employment for the father, who it found failed to seek such employment. In Ney, this Court reversed the trial court's order, concluding that other than the court's own internet search, no evidence appeared in the record that supported a finding that the father had failed to make reasonable efforts to find appropriate employment. Id. at 868. Here, as found by the trial court, Mother relied on the continuation of questionable medical claims and failed to present any evidence of her attempts to mitigate her lost income. Most telling is the trial court's finding that "even giving Mother the benefit of looking at all of 2017, the entirety of her mitigation efforts consisted of two minimum wage food service jobs with an average of only 10 working hours per week." TCO at 3.

Turning to Mother's third issue, the following contains the entirety of her argument, which states verbatim:

> The Honorable lower Court had set a tone to already had her mind made up to the outcome of the Hearing proceedings. The Actual Facts speaks for itself and if properly recalculated with the 50/50

_____

should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

custody the decision would have been over turned and modification in reduction will be the outcome.

Mother's brief 21-22 (unnumbered).

Lastly, Mother argues the following with regard to issue 4, stating verbatim:

> The Honorable lower Court had the ability to calculate with the New employment current lower wages and chose to keep the calculation of the higher past employer (General Electric) wages as the current earning capacity, that is not valid, as then added in the other information, in the Trier of Fact, of the correct lower wages at that said time, see attached hereto as Exhibit "D". The Honorable lower Court has the right and responsibility to adjust, modify, suspend, and terminate an Order. The Honorable lower Court had all the opportunity to look into what was needed to be done to bring the appropriate calculation of the facts presented and make the adjustment as needed.

Id. at 22-23 (unnumbered).

It appears that Mother is simply arguing that the trial court's findings of fact and credibility determinations are incorrect. In other words, Mother is essentially arguing that the court should have found credible her testimony relating to her alleged medical problems, which the court found had not continued to the essential period of time in question. Specifically, the court mentioned the questionable document from a chiropractor, the fact that Mother was given a medical release to work, and the pictures evidencing her participation in a Tae Kwon class that were submitted into evidence. Mother overlooks this Court's standard of review that compels us to defer to the trial court's factual findings so long as they are supported by the record. See Mackay, 984 A.2d at 533 (stating that this Court "must accept findings of the

trial court that are supported by competent evidence of record" and that we are "not free to usurp the trial court's duty as the finder of fact"). Our review of the record reveals that the trial court's findings are supported by the record. Additionally, we rely on the court's explanation relating to Mother's assertion that the summer 50/50 custody schedule does not overcome the 67% time in Father's custody versus Mother's 33% custody time. See Pa.R.C.P. 1910.16-4(c)(1) (stating that "[w]hen the children spend 40% or more of their time during the year with the obligor, a rebuttable presumption arises that the obligor is entitled to a reduction in the basic support obligation to reflect this time"). Therefore, we conclude there is no basis upon which to reverse the trial court's decision and Mother has not convinced us otherwise.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/2020